# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMAL BENNETT,** | : | **Civ. No. 4:25-CV-1349** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **THOMAS HEAP,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Factual Background and Procedural History

Jamal Bennett is a state inmate and a prolific, if prodigiously unsuccessful, *pro se* litigant.[1] Bennett's current federal complaint appears to stem from a prior, unsuccessful effort at *pro se* litigation, a state criminal case in which Bennett represented himself and was convicted at trial. The factual background of these state charges has been aptly summarized by the Pennsylvania Superior Court in its decision affirming Bennett's conviction. At that time the Court explained that:

---

[1] Commonwealth v. Bennett, No. 1435 MDA 2022, 2025 WL 2542683, at *1 (Pa. Super. Ct. Sept. 4, 2025); Bennett v. Shoemaker, No. 1:22-CV-0354, 2024 WL 3969682, at *1 (M.D. Pa. Aug. 28, 2024); Bennett v. Shoemaker, No. 1:22-CV-0354, 2023 WL 5434769 (M.D. Pa. Aug. 23, 2023); Bennett v. Cnty. of Lycoming, No. 1:22-CV-0838, 2022 WL 4079622 (M.D. Pa. Sept. 6, 2022).

On March 18, 2021, a confidential informant (CI) arranged a transaction to purchase cocaine by calling a cellular telephone number. [Bennett] ... arrived at the meeting location. Detective Jonathan Rachael, in an undercover capacity, purchased 8 vials of crack cocaine from [Bennett] for $200.00 in pre-recorded and identified $20.00 bills. [Bennett] retrieved the vials from a plastic grocery bag that contained additional controlled substances. By Information filed on September 17, 2021 in CR-1141-2021, the Commonwealth charged [Bennett] with Delivery of a Controlled Substance (cocaine) and Criminal Use of a Communication Facility.

After [Bennett] left the residence where the transaction occurred, he drove away in a black Honda Accord and stopped at a convenience store. Other officers, having observed [Bennett] enter and leave the residence where the drug purchase occurred, followed [Bennett] to the convenience store. [Bennett] entered the store, purchased some items and returned to his vehicle. The officers removed [Bennett] from the black Honda Accord and arrested him on a warrant in another case. [Bennett] was searched incident to arrest. The officers discovered $180.00 of the $200 in pre-recorded buy money. The plastic grocery bag was on the passenger seat of the vehicle. Officers impounded the vehicle, obtained a search warrant, and searched the vehicle. Inside the plastic grocery bag[,] the officers discovered a Glock 43 firearm, 32 vials of crack cocaine, 97 blue waxen bags of fentanyl, and approximately 3.25 grams of methamphetamine. By Information filed on April 23, 2021 in CR-478-2021, the Commonwealth charged [Bennett] with three counts of Possession with Intent to Deliver a Controlled Substance (PWID) and one count of Persons Not to Possess a Firearm, as [Bennett] had a prior conviction from December 15, 1996[,] which made him ineligible to possess firearms.

Commonwealth v. Bennett, No. 1435 MDA 2022, 2025 WL 2542683, at *1 (Pa. Super. Ct. Sept. 4, 2025) (footnotes omitted).

Bennett's current federal lawsuit, which was filed prior to the Superior Court's decision affirming his state court convictions in Lycoming County, rests upon a curious and ultimately unpersuasive premise. Bennett does not attribute this conviction in any way to his conduct. Instead, in his complaint Bennett sues Thomas Heap, the Clerk of Court/Prothonotary of Lycoming County alleging that, despite his requests, Mr. Heap's office failed to include some items that Bennett wished to incorporate into the record on appeal. Alleging that Mr. Heap's conduct was part of some larger, amorphous conspiracy, Bennett asserted that the failure to include these items in the record on appeal resulted in his unjust conviction, violated the Pennsylvania Constitution and state criminal laws, and constituted violations of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution. (Doc. 1-3). Bennett's complaint sought compensatory and punitive damages, the revocation of Mr. Heap's notary license, and other injunctive relief. (Id.)

Bennett initially lodged this case in state court on May 29, 2025. In July of 2025, the defendant removed Bennett's complaint to federal court, (Doc. 1), and moved to dismiss this complaint. (Doc. 4). In his motion to dismiss, Mr. Heap asserts that Bennett's complaint is flawed in multiple ways which cannot be remedied through any more artful form of pleading. This motion is now ripe for resolution. For the reasons set forth below, the motion to dismiss will be granted.

3

## II.    <u>Discussion</u>

### A. <u>Motions to Dismiss—Standard of Review.</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d

1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of

the adequacy of a complaint, the Supreme Court has advised trial courts that they

must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. Second, a District Court must then
> determine whether the facts alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible claim for relief." In other words,
> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The

6

> plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

<u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id.</u>

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol.</u> <u>Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate</u> <u>Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. v.</u> <u>Higgins</u>, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the legal sufficiency of this complaint.

**B. <u>The Motion to Dismiss Will Be Granted</u>**

As discussed below, Bennett's current legal foray—like those which have preceded it—runs afoul of a host of insurmountable legal obstacles. Therefore, this complaint will be dismissed.

8

### 1.  **Bennett's Federal Constitutional Claims Fail**

At the outset, Bennett's federal Constitutional claims against the county clerk/prothonotary all fail as a matter of law. In his complaint, Bennett alleges in a summary fashion that the alleged failure of the prothonotary to forward certain documents to the Superior Court violated the First, Fourth, Eighth and Fourteenth Amendments. However, none of these averments can withstand critical scrutiny.

For example, liberally construed it appears that Bennett has attempted to allege a First Amendment claim against the prothonotary premised upon an alleged denial of access to the courts. Bennett faces an exacting burden in advancing such a claim. It is well-settled that:

> Asserting an actionable claim for denial of access to the courts requires a prisoner to allege that (1) they "lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim" and (2) they have no available remedy for the lost claim other than the present denial of access action. Rivera v. Monko, 37 F.4th 909, 915 (3rd Cir. 2022) (citing Monroe v. Beard, 536 F.3d 198, 205 (3rd Cir. 2008)). Most significant is the nonfrivolous nature of the claim allegedly lost. The lost claim must be "more than hope" in order to be deemed nonfrivolous. Christopher v. Harbury, 536 U.S. 403, 416 (2002).

Payne v. Stanbaugh, No. 1:22-CV-2063, 2023 WL 11015035, at *6 (M.D. Pa. July 18, 2023), report and recommendation adopted in part, No. 1:22CV2063, 2024 WL 1536735 (M.D. Pa. Apr. 9, 2024).

Judged against these legal guideposts, Bennett's First Amendment allegations fail to satisfy either of the elements of a First Amendment access to courts claim. First, Bennett has not shown that the legal claims advanced in his Superior Court appeal were more than a mere hope. Quite the contrary, the Superior Court expressly rejected Bennett's claims on appeal, observing that: "The evidence is clearly sufficient to support his convictions. No relief is due" to Bennett. Commonwealth v. Bennett, 2025 WL 2542683, at *16. In addition, Bennett cannot credibly contend that he had no available remedy for the lost claim other than the present denial of access action since it is evident that state appellate practice provides the means for Bennett to supplement his record on appeal, see Pa. R.A.P. 1926, and it was Bennett's responsibility to ensure that the record was complete since: "Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials." Pa.R.A.P. 1921 (Note). Further, it is apparent from the Superior Court's decision that Bennett actually availed himself of this relief on appeal. Commonwealth v. Bennett, 2025 WL 2542683, at *2. Therefore, this claim fails.

Bennett's Fourth and Eighth Amendment claims are also unavailing because the prothonotary is not a proper defendant with respect to these allegations. To be sure the Fourth Amendment forbids unreasonable searches and seizures, but it is undisputed that Mr. Heap, the Clerk of Court, did not engage in any investigative

search or seizure in Bennett's state case. Holding the prothonotary liable for police searches would stretch this Constitutional guarantee beyond recognition. Likewise, the Eighth Amendment, which prohibits cruel and unusual punishment, applies to the conduct of jailers. Mr. Heap, the Clerk of Court/Prothonotary, plays absolutely no role in determining the place, manner or conditions of Bennett's confinement. This claim plainly fails.

Finally, Bennett's vague and general reference to the Fourteenth Amendment cannot save this case, particularly when the plaintiff's more specific Constitutional claims fail as a matter of law. On this score, Bennett's Fourteenth Amendment averments run afoul of the more specific provision rule. As the Court of Appeals has explained:

> Noting its "reluctan[ce] to expand the concept of substantive due process," the Supreme Court has established the "more-specific-provision rule." County of Sacramento v. Lewis, 523 U.S. 833, 843–44, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior holing in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).

Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010).

11

Here, Bennett's more specific First, Fourth and Eighth Amendment claims fail as a matter of law. The failure of these more specific legal claims, in turn, defeats any reliance by Bennett on the general rubric of Fourteenth Amendment substantive due process.

Simply put, none of these federal Constitutional claims can withstand scrutiny. Therefore, these claims will be dismissed.

## 2.  <u>Heap is Entitled to Quasi-Judicial Immunity.</u>

Bennett's claims for damages against the Clerk of Court/Prothonotary encounter yet another legal obstacle. Defendant Heap is cloaked in immunity for his quasi-judicial functions. As we have noted in this regard:

> [N]umerous courts have held that certain tasks performed by prothonotaries and court clerks are shielded by quasi-judicial immunity. See Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that a prothonotary who allegedly refused to send the plaintiff a requested transcript was acting as a "quasi-judicial official"); <u>Lockhart</u>, 411 F.2d at 460 (holding that a prothonotary who was acting under court direction was immune from suit); <u>Locke</u>, 2008 WL 2096815, at *3 (holding that a prothonotary who determined that a motion for reconsideration was not timely filed was performing a discretionary function and was immune from suit); see also Denlinger, 2007 WL 4615960, at *3 (using "court clerks and prothonotaries" as examples of individuals who may be entitled to quasi-judicial immunity); <u>O'Nembo</u>, 2006 WL 3857487, at *2 (same); <u>Hurst</u>, No. 06-146, 2006 WL 1328729, at *6 (D.Del. May 16, 2006) (same); <u>McKnight v. Baker</u>, 415 F.Supp.2d 559, 563 (E.D.Pa.2006) (same).

12

Conklin v. Warrington Twp., No. CIV.A. 1:06-CV-2245, 2008 WL 2704629, at *9

(M.D. Pa. July 7, 2008). This quasi-judicial immunity is grounded upon and derived

from the immunity enjoyed by judges, and acknowledges that:

> In certain circumstances, the doctrine of quasi-judicial immunity insulates from suit those public officials who "perform functions closely associated with the judicial process." Locke v. Caldwell, No. 07-2272, 2008 WL 2096812, at *3 (E.D.Pa. May 16, 2008) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). The dispositive inquiry in determining whether to afford an individual quasi-judicial immunity is "the nature of the function performed, not the identity of the actor who performed it." Tucker v. I'Jama, 173 F. App'x 970, 971 (3d Cir.2006). In other words, quasi-judicial immunity attaches when a "public official's role is 'functionally comparable' to that of a judge," Dotzel v. Ashbridge, 438 F.3d 320, 325 (3d Cir.2006) (quoting Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir.2003)), or when a public official acts "pursuant to court directive," see Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (basing the aforementioned rule upon the "manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control"); see also Alexander v. McMonagle, No. 99-1298, 1999 WL 1210844, at *1 (E.D.Pa. Dec.9, 1999) ("Quasi-judicial officers who act in accordance with their duties or at the direction of a judicial officer are immune from suit.")

Id. at *8.

In this case, Bennett attempts to sue Heap for performing one of his core

ministerial functions, transmitting a record on appeal. Since this act is a

nondiscretionary duty which is an integral part of the judicial process, Heap's

performance of this function is cloaked in quasi-judicial immunity and the

prothonotary may not be sued for the manner in which he discharged this responsibility.

### 3. **Bennett's References to Criminal Statutes Do Not Provide Grounds for Action by This Court.**

Bennett's complaint is also replete with references to state and federal criminal statutes. While these references serve as illustrations of the vehemence of Bennett's views, they add nothing to the legal sufficiency of his claims. At the outset, to the extent that the plaintiff invites us to order the criminal investigation or prosecution of any state official, it has long been recognized that the exercise of prosecutorial discretion is a matter "particularly ill-suited to judicial review." <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985). Recognizing this fact, courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal investigation or prosecution of some third party, finding that civil plaintiffs lack standing to make such claims and concluding that such relief simply is unavailable in a civil lawsuit. <u>See, e.g.</u>, <u>Ostrowski v. Mehltretter</u>, 20 F. App'x 87, 90 (2d Cir. 2001); <u>Kim v. Romero</u>, 877 F.2d 64, 1989 WL 67116 at *1 (9th Cir. June 14, 1989) (affirming the dismissal of a suit against various prosecuting authorities for their failure to bring charges against a sheriff for alleged battery); <u>McMinn v. Damiani</u>, 765 F. 2d 145, 1985 WL 13323 (6th Cir. May 3, 1985).

Nor can Bennett imply some right to bring a civil cause of action based upon some criminal statute. Quite the contrary, in this regard:

> The Court is guided by the general principle that courts are "reluctant to infer a private right of action from a criminal prohibition alone," especially where the criminal statute is "bare" as to private enforcement. Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994); see also Leeke v. Timmerman, 454 U.S. 83, 86 (1981) (holding that private citizens cannot compel criminal prosecution). To this end, the Third Circuit has repeatedly held that criminal statutes generally do not create private rights of action. See Tezler v. Borough of Englewood Cliffs, 783 F. App'x 253, 257–58 (3d Cir. 2019); Timm v. Wells Fargo Bank, 701 F. App'x 171, 175 (3d Cir. 2017); Coleman v. Academy Bus, LLC, 858 F. App'x 584, 585 (3d Cir. 2021); see also Caterbone v. Lancaster City Bureau of Police, Civil Action No. 18-CV-2710, 2018 WL 3549266 at *3 (E.D. Pa. July 24, 2018) ("Criminal statutes do not generally provide a basis for a litigant's civil claims, and this Court lacks the authority to initiate criminal proceedings.").

Lewis v. Chance, No. 1:25-CV-446, 2025 WL 1808777, at *8 (M.D. Pa. July 1, 2025) (quoting Miller v. Nelling, No. CV 22-3329-KSM, 2023 WL 2743564, at *3 (E.D. Pa. Mar. 31, 2023)).   In this case none of the state criminal statutes cited by Bennett provide him with a private right of action against the prothonotary. See e.g., Williams v. Wetzel, 2020 U.S. Dist. LEXIS 20105, at *47 (M.D. Pa. 2020) (no private cause of action for "tampering with public records" under Pennsylvania Crimes Code); Barnes v. City of Coatesville, 1993 U.S. Dist. LEXIS 9112, 1993 WL 259329, at *6 (E.D. Pa. 1993) aff'd, 60 F.3d 813 (3d Cir. 1995) (no civil remedy for false swearing); Simpson v. City of Coatesville, 2015 U.S. Dist. LEXIS 154964, 2015 WL 7251546, at *5-6

(E.D. Pa. 2015) (declining to find a private cause of action to impost civil liability for § 4902 (perjury)); <u>Elansari v. Ramirez</u>, 816 F. App'x 630, 632 (3d Cir. 2020) ("Pa. Cons. Stat. §§ 7611 [unlawful use of computer] and 7612 [computer trespass] do not provide an express private right of action, and there is no basis to imply a private right of action here."); <u>Johnson v. Koehler</u>, 2015 U.S. Dist. LEXIS 42145, at *33-34 (M.D. Pa. 2015) (violation of 18 Pa.C.S. § 5301 (official oppression) does not provide a basis for bringing a claim under Section 1983). Therefore, any claims advanced by Bennett which are premised upon criminal statutes, or designed to instigate criminal proceedings, fail.

### 4. <u>The Pennsylvania Constitution Does Not Provide for a Private Right of Action for Damages.</u>

Likewise, Bennett may not rely upon the Pennsylvania Constitution to bring damages claims in this case. Such claims are foreclosed by settled legal doctrine; specifically: "The prevailing view in this circuit [which] is that 'Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution.'" <u>Hamilton v. Spriggle</u>, 965 F. Supp. 2d 550, 577 (M.D. Pa. 2013) (quoting <u>Gary v. Braddock Cemetery</u>, 517 F.3d 195, 207 n. 4 (3d Cir.2008)).

5.  **Bennett's Cvil Conspiracy Claim Fails.**

Nor can the plaintiff save these otherwise infirm substantive tort claims by cloaking them in the rubric of some form of conspiracy. In order to sustain this claim Bennett may not rely upon general vague assertions of conspiratorial misconduct unadorned by specific facts. Instead:

> [T]o maintain a civil conspiracy claim, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." Id. A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Soto v. RE/MAX of Poconos, No. 3:22-CV-528, 2023 WL 2352241, at *6 (M.D. Pa. Mar. 3, 2023). Furthermore, in order to state such a claim:

> The plaintiff must base his or her allegations of a civil conspiracy on an underlying tort. Festa v. Jordan, 803 F. Supp. 2d 319, 326 (M.D. Pa. 2011) (Caputo, J.); see McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005) (citing Boyanowsky v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000)). "Ultimately, 'only a finding that the underlying tort has occurred will support a claim for civil conspiracy.' " Reese v. Pook & Pook, LLC, 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016) (quoting Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (quotation omitted)).

Kretulskie v. Madison Nat'l Life Ins. Co., Inc., No. 3:18-CV-1357, 2019 WL 5866694, at *4 (M.D. Pa. Oct. 9, 2019), report and recommendation adopted, No. 3:18-CV-1357, 2021 WL 2478441 (M.D. Pa. June 17, 2021).

Judged by these guideposts, Bennett's civil conspiracy claim founders on at least two independent legal grounds. First, he has failed to properly allege an underlying tort. Second, his complaint sets forth only conclusory allegations of conspiracy which under Pennsylvania law will not suffice to allege an actionable civil conspiracy. Therefore, this claim fails.

### 6. **To The Extent That Bennett is Suing the State Court System for Damages His Claims Fail.**

Finally, if Bennett seeks damages in federal court from the state courts as an institutional defendant, this claim encounters statutory and constitutional barriers. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States. . . ." U.S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh

Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Therefore, Bennett may not maintain any official capacity damages claims against these state officials.

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Pennsylvania State Police and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically, by statute, invoked its Eleventh Amendment immunity in 42 Pa. Cons. Stat. § 8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court under 42 Pa. Cons. Stat. § 8522, Section 8521(b), flatly states that, "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. Con. Stat. § 8521(b).

The Eleventh's Amendment's bar prohibiting lawsuits in federal court against agencies expressly applies to claims like those brought here against the state court system. As we have observed in the past:

> These state court agencies, . . ., are defined by statute as arms of the state courts, and are institutions of state government. See, e.g., Walters v. Washington County, No. 06–1355, 2009 WL 7936639 (W.D.Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09–266, 2009 WL 3052411 (W.D.Pa. Sept.22, 2009). Therefore, individual counties cannot be held liable for the actions of state court judges, who are part of the unified state court system.
>
> Since the courts are institutions of state government, this complaint further runs afoul of basic constitutional rules limiting lawsuits against state agencies and officials. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States ....", U.S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).
>
> Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These court officers and agencies enjoy immunity from lawsuit under the Eleventh Amendment. See, e.g., Walters v. Washington

> Count*y*, No. 06–1355, 2009 WL 7936639 (W.D.Pa. March 23, 2009);
> Van Tassel v. Lawrence County Domestics Relations Section, No. 09–
> 266, 2009 WL 3052411 (W.D.Pa. Sept.22, 2009). Absent an express
> waiver of the immunity established by the Eleventh Amendment, all of
> these agencies, and their employees who are sued in their official
> capacities, are absolutely immune from lawsuits in federal court.

Rose v. York Cty., No. 1:13-CV-2056, 2013 WL 4456220, at *7 (M.D. Pa. Aug. 1, 2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL 4434748 (M.D. Pa. Aug. 16, 2013). Therefore, this settled, constitutionally rooted immunity defeats any institutional or individual official capacity claims for damages.

Finally, we recognize that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, however, Bennett's complaint is flawed in multiple ways which are not subject to cure by any more artful form of pleading. Therefore, this complaint will be dismissed with prejudice.

## III.    **Conclusion**

Accordingly, for the foregoing reasons, the defendant's motion to dismiss, (Doc. 4), will be GRANTED.

21

An appropriate order follows.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: January 29, 2026.